UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION FOR MATERIAL WITNESS SUMMONS IN RE MOTOR TANKER ZAO GALAXY | Case No. 19-xr-90626-KAW-1<br><br>**ORDER GRANTING RENEWED PETITION FOR RELEASE BY MATERIAL WITNESS**<br><br>Re: Dkt. No. 8 |

On July 3, 2019, Petitioner Sonny Maralit Macasaet filed a petition for release. (Case No. 19-mc-80172-TSH, Dkt. No. 1.) The petition was subsequently denied without prejudice by Judge Hixson on July 30, 2019. (Case No. 19-mc-80172-TSH, Dkt. No. 8 ("Hixson Ord.").)

Pending before the Court is Petitioner's renewed petition. (Renewed Petition, Dkt. No. 8.) Having considered the parties' filings, the relevant legal authorities, and the arguments made at the September 4, 2019 hearing, the Court GRANTS Petitioner's petition for release.

## I. BACKGROUND

### A. Factual Background

Petitioner is a citizen of the Philippines, and was the Chief Engineer of the M/T Zao Galaxy ("Zao Galaxy"), an oceangoing motor tanker. (Renewed Petition, Exh. A ("Petition") at 2, Dkt. No. 8-1.) On February 10, 2019, the Zao Galaxy arrived at the Port of Richmond. (*Id.*) On February 11, 2019, the U.S. Coast Guard boarded the Zao Galaxy to conduct a safety inspection. While on board, a crewmember allegedly told the inspectors that oily water had been illegally discharged into international waters. (*Id.*; Renewed Petition, Exh. C ("Gov.'s Opp'n") at 2.) The Coast Guard initiated an inspection into potential violations of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1901, and the International Convention for the Prevention of the

Pollution from Ships ("MARPOL"). (*Id.*)

During the investigation, the Coast Guard obtained videos of drum containers, flexible pipes, and flanges ("hose-and-barrel system") set up in the vessel's engine room, designed to discharge untreated oily waste directly into the ocean. (Gov.'s Opp'n at 2-3.) Two crew members confirmed the purpose of the hose-and-barrel system was to discharge oily waste directly into the ocean, and that they had been ordered by the vessel's First Engineer to perform the illegal discharge. (*Id.* at 3.) Petitioner also confirmed that he saw the hose-and-barrel system. (*Id.*) The Coast Guard reviewed the "Oil Record Book" ("ORB"), which are records of the equipment used to clean oily waste water before being dumped into the ocean. (*Id.*) The ORB entries, which had been approved by the vessel's captain and Petitioner, showed discrepancies, including unaccounted for oily waste and no entries to document the use of the hose-and-barrel system. (*Id.*)

On February 20, 2019, the Coast Guard and the Zao Galaxy's owner entered into a Security Agreement, allowing the vessel to leave while the investigation proceeded. (Petition at 2; Gov.'s Opp'n at 3.) As a condition, Petitioner and nine other crew members were required to surrender their passports and remain in the Northern District of California. (Petition at 2-3; Gov.'s Opp'n at 3-4.) The Security Agreement required that the Zao Galaxy's owner provide the crew members: (1) their full salaries, (2) a daily $50 per diem, (3) health care coverage, and (4) lodging. (Gov.'s Opp'n at 4.)

The Government's investigation is ongoing. On May 3, 2019, the Government interviewed Petitioner pursuant to a letter immunity agreement. (Petition at 4; Schwartz Decl. ¶ 5, Dkt. No. 8-1.) Petitioner's counsel was informed that Petitioner was the last crew member to be interviewed, aside from the First Engineer (the target of the investigation, and who will not be interviewed). (Schwartz Decl. ¶ 5.) Petitioner's counsel further believes no interviews of any crew members have been conducted since. (*Id.*)

On July 10, 2019, the Government requested information and/or materials pertinent to the investigation. (Gov.'s Opp'n at 4-5.) This information is in addition to the eight computers and one portable hard drive seized from the Zao Galaxy, which contains eight terabytes of vessel data. (*Id.* at 4.) The Government states that once it does not require the crew members to remain in the

2

Northern District of California, it repatriates the crew member; five of the crew members have been returned to their countries or origin. (*Id.* at 5.) The remaining crew members are: (1) the Captain, (2) Petitioner, the Chief Engineer, (3) the First Engineer, (4) the crew member who recorded the illegal dumping, and (5) the crew member who was directed to set up the hose-and-drum system. (*Id.*) The Government is currently engaged in negotiations for a pre-indictment resolution. (*Id.*)

In the meantime, Petitioner currently resides in a hotel in Emeryville. (Petition at 3; Gov.'s Opp'n at 4.) Petitioner's contract with the Zao Galaxy expired on May 26, 2019, after which he was to return to the Philippines.[1] (Petition at 3.) Petitioner's family remains in the Philippines. (*Id.*)

## B. Procedural Background

On July 3, 2019, Petitioner filed his original petition for release before Judge Hixson. (Case No. 19-mc-80172-TSH, Dkt. No. 1.) On July 17, 2019, the Government filed its opposition. On July 18, 2019, the Government filed an application for the Court to issue a material witness summons to Petitioner. (Material Witness App., Dkt. No. 1.) The Court granted the petition that same day. (Dkt. No. 4.) On July 24, 2019, Petitioner filed his reply in support of his petition for release. (Case No. 19-mc-80172-TSH, Dkt. No. 7; Renewed Petition, Exh. D ("Petitioner's Reply").) On July 30, 2019, Judge Hixson denied the petition for release without prejudice. (Hixson Ord. at 1.) Judge Hixson explained that because a material witness summons has been issued, "any relief sought by [Petitioner] is properly raised in the action now pending before Judge Westmore." (*Id.*)

On August 5, 2019, Petitioner filed his renewed petition for release in the instant case. Petitioner attached the original petition, the Government's opposition, and his reply. Petitioner requests that the Court compel the return of his passport and his immediate release, or the prompt taking of his deposition, followed by his release. (Renewed Petition at 2.)

---

[1] At the hearing, Petitioner clarified that although the contract ended on May 26, 2019, the ship left without him on February 20, 2019 after the posting of a security agreement with the Government. Thus, he has been detained by the Government in California for over six months.

## II. LEGAL STANDARD

Petitioner asserts that as a material witness, he should be deposed and released pursuant to 18 U.S.C. § 3144 and Federal Rule of Criminal Procedure 15. (Petition at 6.) 18 U.S.C. § 3144 concerns the release or detention of a material witness. It permits a judicial officer to order the arrest of a material witness to a criminal proceeding "if it is shown that it may become impracticable to secure the presence of the person by subpoena . . . ." "No material witness," however, "may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure."

Rule 15, in turn, concerns depositions. It permits a party to "move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Cr. P. 15(a)(1). Specific to witnesses detained per 18 U.S.C. § 3144, such witnesses "may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript." Fed. R. Cr. P. 15(a)(2).

Thus, "[r]ead together, Rule 15(a) and § 3144 provide a detained witness with a mechanism for securing his own release." *Torres-Ruiz v. U.S. Dist. Ct.*, 120 F.3d 933, 935 (9th Cir. 1997) (internal quotation omitted). A petitioner must file a written motion that demonstrates his testimony can be adequately secured by a deposition, and that further detention is not needed to prevent a failure of justice. *Id.* "Upon such showing, the district court *must* order his deposition and prompt release." *Id.*

## III. DISCUSSION

### A. Standing

As an initial matter, the Government argues that Petitioner lacks standing to request a Rule 15 deposition because he is not "detained under 18 U.S.C. § 3144." (Gov.'s Opp'n at 5 (quoting

Fed. R. Cr. P. 15(a)(2)).) Petitioner responds that he is effectively detained because he is being required to remain in the Northern District of California, away from his home in the Philippines. (Petitioner's Reply at 1-2.)

In *United States v. Maniatis*, the petitioner filed a similar petition for a court order allowing him to return to his home, or to require the parties to take his deposition pursuant to Rule 15. No. 07-CR-24-DLJ, at *1 (E.D. Cal. June 20, 2007). The district court found that while Petitioner had not been formally detained under 18 U.S.C. § 3144, he was "a functionally detained witness under Rule 15," explaining that "Petitioner's passport has been taken from him and he has been compelled to remain in the United States pending trial in this matter." *Id.* at *3. After finding that requiring the petitioner to remain in the United States until the trial started in September 2007 "would not be in the interests of justice," the district court ordered the government and defense to depose Petitioner and permit him to return home thereafter. *Id.*

In *United States v. Dalnave Navigation*, the district court likewise expressed skepticism that detention requires incarceration. Criminal No. 09-130, 2009 U.S. Dist. LEXIS 21765, at *5-6 (D.N.J. Mar. 18, 2009). The district court, however, concluded that it need not decide the issue "because the Government concede[d] that it is within the discretion of this Court to direct the parties to participate in depositions in order to preserve the witnesses' testimony for trial, and thereby facilitate their speedy return home." *Id.* at *6 (internal quotation omitted). The Court found that immediate depositions were warranted, given that "[t]he Material Witnesses have been in the country against their will for over six months, with little end in sight. They have done nothing wrong. They are charged with no crimes. Their families ache for their return, but because the Government retains their passports, they are precluded from leaving the country. Enough is enough." *Id.* at *6-7.

The Court finds that Petitioner is functionally detained. Like the petitioner in *Maniatis*, Petitioner has not been formally detained, but has had his passport taken from him and been compelled to remain in the Northern District of California since February 20, 2019. (Petition at 2-3.) Thus, Petitioner has been unable to return to his home in the Philippines for over six months. Therefore, Petitioner has standing to request a Rule 15 deposition.

### B. Reasonable Period of Time

Petitioner argues that per § 3144, he can only be held for a reasonable time, which he asserts is "very short." (Petition at 6-7.) Petitioner first points to Federal Rule of Criminal Procedure 46(h)(2), which requires that the government make a "biweekly report" to the court, listing each material witness held in custody for more than ten days and justifying the continued detention of each witness. Petitioner argues this "supports the notion that reasonable detention should be measured in terms of days, not weeks and months, and that judicial oversight to limit the time that the government detains witnesses must be closely supervised and curtailed." (*Id.* at 7.)

Petitioner next points to other decisions that considered "reasonable time" in terms of days. (Petition at 7.) In *Torres-Ruiz*, the Ninth Circuit emphasized that the two material witnesses had been detained for a period of over sixty days in finding that the witnesses should be deposed. 120 F.3d at 935. In *United States v. Chen*, the district court ordered depositions where the witnesses had been detained for approximately two months. 214 F.R.D. 578, 579 (N.D. Cal. 2003). In *United States v. Rivera*, the trial court ordered that material witnesses be deposed and permitted to leave after they were retained in custody for approximately three weeks. 859 F.2d 1204, 1205-06 (4th Cir. 1988) (describing trial court proceedings).

The Government does not appear to challenge that a "reasonable time" should be relatively short. Instead, the Government contends that Petitioner must demonstrate that there are "exceptional circumstances" that warrant his immediate deposition, per Rule 15(a). (Gov.'s Opp'n at 6.) The Government, however, refers to the "exceptional circumstances" language of Rule 15(a)(1); Rule 15(a)(2), which concerns material witnesses detained under 18 U.S.C. § 3144, has no such exceptional circumstances language. Thus, several courts have found that a petitioner who is a material witness need not demonstrate exceptional circumstances. *Chen*, 214 F.R.D. at 579 ("A *party* seeking to take a Rule 15 deposition must make a showing of 'exceptional circumstances' as required by Rule 15(a)(1). Where a material witness, instead, moves for a Rule 15 deposition, he need not show such 'exceptional circumstances.'"); *Mercator Lines Ltd. (Sing.) PTE Ltd. v. M/V Gaurav Prem*, Misc. No. 11-00024-CG-C, Criminal No. 11-mj-00203-N, 2011 U.S. Dist. LEXIS 153429, at *29 (S.D. Ala. Oct. 25, 2011) (rejecting the government's argument

6

that "exceptional circumstances" needed to be demonstrated "because Taohim is not traveling under Rule 15(a)(1) in requiring that his deposition be taken; instead, he is traveling under Rule 15(a)(2) which does not require the material witness to establish exceptional circumstances as a predicate for a court-ordered deposition').

The Court therefore concludes that Petitioner need not demonstrate exceptional circumstances in this case. Further, the Court finds that while "[r]elease of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken," any delay beyond what is permitted by this order will not be reasonable. This is particularly the case when Petitioner has already been forced to remain in California for more than six months.

### C. Adequate Deposition

Petitioner has the burden of showing that his testimony can adequately be secured by deposition. *See Torres-Ruiz*, 120 F.3d at 935. The parties dispute whether Petitioner's testimony can be taken at this point.

The Government makes several arguments for why Petitioner's testimony cannot be adequately secured at this time. First, the Government argues that live witness testimony is preferred, as Petitioner would not be required to return for any trial. (Gov.'s Opp'n at 7.) If Petitioner does not return, the defendant may not have the opportunity to cross-examine him. (*Id.*) Petitioner responds that the targets of the investigation, including the First Engineer and the owner and operators of the vessel, "are willing to stipulate to the taking of [Petitioner's] deposition." (Petitioner's Reply at 3.) The Court agrees with Petitioner. It is untenable for the Government to argue that Petitioner should be forced to remain in California until trial simply because live testimony is "preferred," as a trial can be years from now, if ever, and the Government has yet to finish its investigation or charge anyone. *See Maniatis*, 2007 U.S. Dist. LEXIS 47543, at *4 (declining to require the petitioner to remain in the United States for three more months until trial when the petitioner had already been forced to remain for over six months).

Second, the Government argues that requiring depositions at this time may affect the defendants' rights because the investigation is not yet complete and no parties have been charged in the matter. (Gov.'s Opp'n at 8.) Thus, the Government believes it and any potential defendants

7

may not be able to effectively depose Petitioner, especially within the ten days requested by Petitioner. (*Id.*) Petitioner responds that all parties are fully aware of the potential charges and the relevant facts related to such charges, and that the targets of the investigation are willing to stipulate to the taking of his deposition. (Petitioner's Reply at 3.) Again, the Court agrees. The parties are aware of the facts that underlie the investigation, even if the exact charges are not certain at this time. Thus, the parties can conduct an effective deposition. Further, to the extent the Government contends that depositions at this time will harm the potential defendants, the potential targets have, in fact, agreed to the deposition.

Finally, the Government contends that a deposition may not be admissible at trial. (Gov.'s Opp'n at 8.) The Government again points to the fact that charges have not been filed, arguing that without charges, "any potential party would not have the same motive nor opportunity to cross-examine the witness as they would at trial since the nature of the crimes charged would necessarily dictate what relevant information is needed from the witness." (*Id.*) The Government contends that one issue still being investigated is whether the dumping occurred within 200 miles of the U.S. coast, as this could then constitute a Clean Water Act violation. (*Id.* at 9.) At the hearing, the Government acknowledged that it is considering pursuing a potential charge for obstruction of justice. So, it is well aware of the potential array of charges that may be brought depending on the facts uncovered before taking Petitioner's deposition. Thus, while the exact charges in this case are unknown, as discussed above, this does not preclude an effective deposition.

The Government also raises concerns that the deposition may not be admissible because it would have to demonstrate that the witness was unavailable to testify at trial. (*Id.*) Petitioner correctly points out that the Government's argument "is disingenuous, given that the United States seeks to detain him here as a material witness precisely because he would otherwise become unavailable." (Petitioner's Reply at 3 n.1.)

Accordingly, the Court concludes that Petitioner's testimony can be adequately secured by deposition.

///

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Petitioner's petition for release. Petitioner's deposition shall be taken within thirty days of the hearing, *i.e.*, on or before October 4, 2019. After the deposition, Petitioner shall be immediately released once he has signed the deposition transcript under oath. Petitioner shall be released no later than October 11, 2019.[2]

IT IS SO ORDERED.

Dated: September 5, 2019

                                     _____
                                     KANDIS A. WESTMORE
                                     United States Magistrate Judge

---

[2] Given the need to obtain Petitioner's signature on the deposition transcript and the Government's uncertainty about how long the deposition will take, the Court cautions the Government to avoid waiting until the last possible day to take the deposition.